IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                Case No. 22-CR-170-JFH

ELGA EUGENE HARPER,

    Defendant.

## OPINION AND ORDER

Before the Court is a motion to exclude or limit expert testimony ("Motion") filed by the United States of America ("Government"). Dkt. No. 49. Defendant Elga Eugene Harper ("Defendant") plans to offer expert testimony from Geoffrey Loftus, Ph.D. ("Dr. Loftus"), at trial. The Government seeks to limit or exclude Dr. Loftus' testimony. *Id.* Defendant objects to the Motion. Dkt. No. 56. The Court held a hearing on January 12, 2023. For the reasons stated, the Government's Motion is GRANTED. Dr. Loftus' testimony is INADMISSIBLE.

## BACKGROUND

In May 2022, elderly female E.F. was physically and sexually abused, resulting in numerous serious injuries. Dkt. No. 49 at 1-4; Dkt. No. 56 at 2. The dispute between the parties involves the identity of her assailant. *Id.* The Government charged Defendant with four crimes relating to the assault perpetrated on E.F.: kidnapping, aggravated sexual abuse by force and threat, assault with a dangerous weapon with intent to do bodily harm, and assault resulting in serious bodily injury. Dkt. No. 13. Defendant claims the case is an example of mistaken identity.

The Government plans to present evidence at trial that Defendant was the assailant. It describes in the Motion that E.F. was previously acquainted with Defendant because he had worked odd jobs for her and had sought counseling services from her; that E.F. had multiple

opportunities to see and talk to the individual who assaulted her throughout an approximate four-hour timeframe where she was attacked; that, immediately following the attack, E.F. called 911 to request help and reported that Defendant was the individual who assaulted her; that E.F. told first responders at the scene that Defendant was the individual who assaulted her; and that E.F. consistently told police, medical professionals, FBI agents, and sexual assault nurse examiners that Defendant was the individual who assaulted her. *See generally* Dkt. No. 49.

Defendant claims he visited E.F.'s residence on the day of the charged conduct and found her after she had already been assaulted. Dkt. No. 56. During an interview with law enforcement shortly after his arrest, Defendant "vehemently denied hurting E.F.," "told detectives E.F. knew his name because he worked with her," and "suggested that 'there's multiple gentlemen in the area that may or may not be of my size, of my color, of my race.'" Dkt. No. 49 at 4. He intends to introduce expert testimony from Dr. Loftus—a psychologist and an emeritus professor at the University of Washington with expertise in memory, attention, and perception—"that a highly stressful event, such as a physical or sexual assault, followed by exposure to possible misinformation (the presence of the Defendant) can cause the formation of a false memory – that Defendant was the person who assaulted [E.F.]." Dkt. No. 56 at 1, 3-4.

## AUTHORITY AND ANALYSIS

Admissibility of expert witness testimony is evaluated under Federal Rule of Evidence 702, which permits a qualified expert witness to testify and render an opinion when:

> The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> The testimony is based on sufficient facts or data;
>
> The testimony is the product of reliable principles and methods; and

> The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat'l Life Assur. Corp.*, 11-CV-475, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)). "First, the Court determines whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Lippe v. Howard*. 287 F. Supp. 3d 1271, 1277-78 (W.D. Okla. 2018). "If so qualified, the Court must then determine whether the expert's opinion is reliable and relevant under the principles set forth in *Daubert* and *Kumho Tire*, in that it will assist the trier of fact." *Id.* at 1278.

The Government does not challenge Dr. Loftus' qualifications, and so the Court assumes without deciding that he is qualified to render the anticipated opinions. It focuses instead on the "touchstone" of admissibility of expert testimony: its helpfulness to the trier of fact. *See Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002).

"No one disputes that an eyewitness's [sic] identification of a defendant can create a significant impact at trial." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006). However, generally, "expert psychological testimony is unlikely to assist the jury—skillful cross-examination provides an equally, if not more, effective tool for testing the reliability of an eyewitness at trial." *Id.* at 1125. Memory and perception are within an average juror's common knowledge and experience, and "[a]n average juror understands that memory, perception, and recall can be affected by high-stress circumstances." *United States v. Maryboy*, --- F. Supp. 3d ---, 2022 WL 4235142, at *5-6 (D. Utah 2022).

The Tenth Circuit instructs that psychological expert witness testimony on identification is appropriately admitted only in "narrow" and "limited circumstances," such as "cross-racial identification, identification after a long delay, identification after observation under stress, and such psychological phenomena as the feedback factor and unconscious transference." *Rodriguez-Felix*, 450 F.3d at 1124 (quotation and citation omitted). The Court does not find that such narrow, limited circumstances exist here. While Defendant does describe a situation implicating cross-racial identification and identification after observation under stress, the identifications in this case were not made after a long delay. Instead, E.F. made them repeatedly and immediately after the assault she endured. There is a recorded 911 call of her identification along with multiple reports to first responders, medical professionals, and investigators. This situation is more akin to an "evidentiary cornucopia" of identification where expert testimony on memory and perception is not helpful, *see Rodriguez-Felix*, 450 F.3d at 1126, than it is to recent cases where similar testimony has been found to be helpful in situations with evidence of long delay and outside influence, *see United States v. Maxwell*, Case No. 20-CR-330, Dkt. No. 516 (S.D.N.Y. Nov. 21, 2021).[1]

**CONCLUSION**

IT IS THEREFORE ORDERED that the Government's motion to exclude or limit expert testimony [Dkt. No. 49] is GRANTED. The Court EXCLUDES the testimony of Dr. Loftus.

---

[1] Relatedly, this case is not analogous to the situation put forth by Defendant in his response to the Government's Motion. Dkt. No. 56-2. As the Government described at hearing, the study Defendant offered describes an assault of less than an hour performed by an individual whom the victim did not know, followed by a gap of more than 24 hours before suggestive questioning which led to misidentification of peripheral details. Here, E.F. was allegedly assaulted for approximately four hours and immediately thereafter spontaneously and repeatedly identified Defendant, whom she had repeated previous acquaintance with, as the individual who assaulted her.

Dated this 18th day of January 2023.

                                                  JOHN F. HEIL, III
                                                  UNITED STATES DISTRICT JUDGE