## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 22-CR-170-JFH |
| ELGA EUGENE HARPER, | |
| Defendant. | |

## OPINION AND ORDER

Before the Court is Defendant's Motion to Reconsider Excluding Testimony of Geoffrey Loftus ("Motion"). Dkt. No. 151. The Government has responded to Defendant's Motion [Dkt. No. 159], and the matter is ripe for consideration. For the reasons set forth below, Defendant's Motion is denied.

## PROCEDURAL AND FACTUAL HISTORY

The factual circumstances of the underlying offense have bearing on the legal issues at stake; as such the Court will go into some detail regarding the allegations against Defendant. On May 4, 2022, E.F. suffered a brutal, prolonged physical and sexual assault in her home. Dkt. No. 49 at 1-4; Dkt. No. 56 at 2. According to E.F., she knew her assailant to be Defendant Elga Harper, whom E.F. had known for approximately a year prior to the assault. Dkt. No. 49 at 2. Defendant Harper had interacted with E.F. just days before the attack. *Id*. According to E.F., Harper came to her home and asked if she had any work for him to do on the day of the attack; when told that she had no work for him to do, he asked to use her restroom. *Id*. E.F. states that she subsequently found Defendant nude in her bedroom, at which time Defendant proceeded to physically and sexually assault her over the course of approximately four hours. *Id*. E.F. states that Defendant tied a rope or cord around her neck and drug her around her house and attempted to penetrate her

mouth, anus and vagina with his penis.  *Id.*  E.F. claims that Defendant spoke to her multiple times during the assault, and she had opportunities to see and speak with Defendant.  Dkt. No. 49.  After the attack stopped, E.F. called 911 and reported the assault, immediately identifying her assailant as Elga Harper.  *Id.* at 2-3.  E.F. continued to identify her attacker as Elga Harper to officers and medical personnel.  *Id.* at 3.

On June 7, 2022, the Government charged Defendant with four crimes relating to the assault perpetrated on E.F.:  kidnapping, aggravated sexual abuse by force and threat, assault with a dangerous weapon with intent to do bodily harm, and assault resulting in serious bodily injury. Dkt. No. 13.

Defendant claims that he visited E.F.'s residence on the day of the charged conduct and found her after she had already been assaulted.  Dkt. No. 56.  During an interview with law enforcement shortly after his arrest, Defendant "vehemently denied hurting E.F.," "told detectives E.F. knew his name because he worked with her," and "suggested that 'there's multiple gentlemen in the area that may or may not be of my size, of my color, of my race.'"  Dkt. No. 49 at 4. Defendant gave notice of his intent to introduce expert testimony from Dr. Geoffrey Loftus – a psychologist with expertise in memory, attention, and perception – who would testify, in part, "that a highly stressful event, such as a physical or sexual assault, followed by exposure to possible misinformation (the presence of the Defendant) can cause the formation of a false memory – that Defendant was the person who assaulted [E.F.]."  Dkt. No. 56 at 1, 3-4.

On January 5, 2023, the Government moved to exclude the testimony of Dr. Loftus.  Dkt. No. 49.  The Government particularly objected to any proposed opinion testimony regarding false memory formation, the plausibility of misrecognizing a stranger as an acquaintance, and any opinions bearing on witness credibility.  Dkt. No. 49 at 1.  Defendant responded in opposition to

the Government's Motion.  Dkt. No. 56.  The Court held a hearing on the Government's Motion on January 13, 2023, during which further oral argument was considered.  Dkt. No. 58.  On January 18, 2023, this Court issued an Order excluding from trial the testimony of a Defendant's proposed expert witness Geoffrey Loftus.  Dkt. No. 59.

A jury trial was held on February 6 to February 9, 2023 before the Honorable Stephen J. Murphy, III [Dkt. No. 76-81]; E.F. testified at trial substantially in keeping with the Court's above summary.  Dkt. No. 119.  Defendant was convicted on all counts.  Dkt. No. 84.  Upon appeal, this matter was remanded to this Court due to the introduction of improper evidence regarding the question of Defendant's Native American status.  *United States v. Harper*, 118 F.4th 1288, 1300 (10th Cir. 2024).  Defendant has now filed the present Motion, contending that the analysis in the Court's prior Order was inconsistent with the Tenth Circuit's opinion remanding this matter.  Dkt. No. 151.

## ANALYSIS

## I.    Reconsideration of the Court's prior Order is appropriate.

Motions to reconsider in criminal cases are proper and cognizable under limited circumstances.  *United States v. Randall*, 666 F.3d 1238, 1241 (10th Cir. 2011).  "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."  *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  A motion to reconsider may also be appropriate where the Court has "misapprehended…the controlling law."  *Id*.

Defendant contends, and the Government agrees, that this Court misapplied the Tenth Circuit's opinion in *United States v. Rodriguez-Felix*, 450 F.3d 1117 (10th Cir. 2006).  In

3

particular, the parties argue that this Court's prior Order appears to have interpreted the *Rodriguez-Felix* opinion's examples of "narrow circumstances" in which expert psychological testimony may be admitted as a list of factors that must be satisfied as a prerequisite to admission of such expert testimony. Dkt. No. 59 at 4. If this is true, then that would indeed be error, as explained by the Tenth Circuit in its *Harper* opinion. 118 F.4th at 1301.

It was not the Court's intention to interpret the *Rodriguez-Felix* language as a checklist of requirements, but, after having reviewed the Order at issue, this Court agrees that its prior Order could be construed as creating such a checklist. Dkt. No. 59 at 4. The Court will re-examine the issue of the admissibility of Dr. Loftus' testimony accordingly.

## II.   Defendant has not demonstrated that his proposed expert witness testimony would be helpful to the trier of fact.

### A.  Legal principles applicable.

Admissibility of expert witness testimony is evaluated under Federal Rule of Evidence 702, which permits a qualified expert witness to testify and render an opinion when:

> The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> The testimony is based on sufficient facts or data;
> The testimony is the product of reliable principles and methods; and
> The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under Rule 702, the Court must first "determine[] whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Lippe v. Howard*. 287 F. Supp. 3d 1271, 1277-78 (W.D. Okla. 2018). The Court must then "determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology." *United States v. Foust*, 989 F.3d 842, 845 (10th Cir. 2021). The *Daubert* Court listed four factors that a trial court may consider in assessing the reliability of proposed expert testimony:

4

> 1) whether the theory at issue can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and whether there are standards controlling the methodology's operation; and (4) whether the theory has been accepted in the relevant scientific community.

*Rodriguez-Felix*, 450 F.3d at 1123 (citing *Daubert*, 509 U.S. at 593-94). These factors are "meant to be helpful, not definitive, and not all of the factors will be pertinent in every case." *United States v. Baines*, 573 F.3d 979, 992 (10th Cir. 2009) (citing *Kumho Tire*, 526 U.S. at 150-51). District courts have "broad discretion to consider a variety of other factors." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). In evaluating proposed expert testimony, a court should generally "focus on an expert's methodology rather than the conclusions it generates," but a court may "conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Once it has been determined that the proposed expert testimony rests upon reliable foundations, the Court must then determine whether the testimony will assist the trier of fact. *Rodriguez-Felix*, 450 F.3d at 1123. The "touchstone" of admissibility of expert testimony is its helpfulness to the trier of fact. *See Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002). The Tenth Circuit has set forth non-exclusive factors a court may consider in determining whether a proposed expert's testimony will be helpful to a jury: "(1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility." *Rodriguez-Felix*, 450 F.3d at 1123. Lastly, the Court notes that "[t]he proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

**B. Dr. Loftus' qualifications are not disputed.**

No party disputes that Dr. Loftus is "qualified as an expert by knowledge, skill, experience, training or education" to render an expert opinion in this matter. Fed. R. Evid. 702. The Court is persuaded that Dr. Loftus is so qualified and next assesses whether the proposed testimony in this matter is reliable under the principles set forth in *Daubert*.

**C. Defendant has not demonstrated that Dr. Loftus' proposed testimony is based upon reliable methods and principles.**

The Tenth Circuit itself has recognized that eyewitness testimony "can create a significant impact at trial" but may also "be subject to significant witness error or manipulation." *Rodrguez-Felix*, 450 F.3d at 1123. As such, expert witness testimony elucidating the potential perils of eyewitness identification may be proper under circumstances that the Tenth Circuit has described as "narrow" and "limited." *Id*. at 1124.

The case law and studies identifying the potential pitfalls of eyewitness identifications have almost universally concerned *stranger* eyewitness identifications. *See* Felix Frankfurter, *The Case of Sacco and Vanzetti: A Critical Analysis for Lawyers and Laymen* 30 (Universal Library ed., Grosset & Dunlap 1962) (1927) ("The identification of strangers is proverbially untrustworthy."); *United States v. Russell*, 532 F.2d 1063, 1066 (6th Cir. 1976) ("There is a great potential for misidentification when a witness identifies a stranger based solely upon a single brief observation . . ."). Indeed, it has been observed that "[e]yewitness misidentification is almost entirely restricted to crimes committed by strangers…." Samuel R. Gross et al., *Exonerations in the United States 1989 through 2003*, 95 J. CRIM. L. & CRIMINOLOGY 523 (2005) (citing Cathy Maston & Patsy Klaus, U.S. Dep't of Justice, Criminal Victimization in the United States, 2002 Statistical Tables 42 tbl.29 (2003)). Similarly, the Seventh Circuit has written that "the social-science studies do not suggest that people who have known one another for weeks or years are apt to err when identifying

them in court." *United States v. Bartlett*, 567 F.3d 901, 906 (7th Cir. 2009). Numerous courts have refused to permit expert psychological testimony, or refused to find that defendant was entitled to present such testimony, where the defendant was known to the identifying witness. *United States v. Bunke*, 412 Fed. Appx. 760, 764 (6th Cir. 2011); *Denmark v. AG of New Jersey*, No. 20-830, 2023 U.S. Dist. LEXIS 15964, *13, 2023 WL 1360385 (D.N.J. Jan. 31, 2023); *Gilreath v. Bartkowski*, No. 11-5228, 2014 U.S. Dist. LEXIS 140484, 2014 WL 4897053, at *12 (D.N.J. Sept. 30, 2014); *Watkins v. Trierweiler*, No. 17-12667, 2020 U.S. Dist. LEXIS 127029, 2020 WL 4192563, at *9 (E.D. Mich. July 20, 2020); *Wagner v. Premo*, No. 15-01612, 2018 U.S. Dist. LEXIS 183326, *20 (D. Ore. Sep. 18, 2018); *Horton v. Richard*, No. 12-757, 2013 U.S. Dist. LEXIS 142066, *46, 2013 WL 5492337 (D. Ohio Oct. 1, 2023); *State v. Crosby*, 928 N.E. 2d 795, 801 (Ohio Ct. App. 2010). All of this comports with common sense and understanding: people are simply more familiar with the distinguishing features of friends and acquaintances, and misidentification is much less likely accordingly.

This is not a case of stranger identification. Rather, the identifying witness, E.F., knew the Defendant well, had known him for some time, and had recently interacted with Defendant prior to the assault. Plaintiff seeks to introduce expert testimony that eyewitnesses may misidentify even individuals who are well-known to them through the formation of "false memories": in Defendant's own words, "that a highly stressful event, such as a physical or sexual assault, followed by exposure to possible misinformation (the presence of the Defendant) can cause the formation of a false memory – that Defendant was the person who assaulted [E.F.]." Dkt. No. 56 at 1, 3-4; Dkt. No. 49-1 at 1-2.

It is Defendant's burden, as the proponent of this expert testimony, to demonstrate that Dr. Loftus' proposed testimony on false memory formation and "misrecogni[tion] of a stranger as an

acquaintance" is reliable by adequately explaining Dr. Loftus' reasoning, methodology, and the bases for his proposed opinions. The Court has considered Defendant's briefing at Dkt. Nos. 56 and 151 as well as Defendant's argument at the motion hearing on the Government's Motion to Exclude Dr. Loftus' testimony, held on January 13, 2023 [Dkt. No. 123]. Defendant has failed to meet his burden of demonstrating that Dr. Loftus' proposed testimony would be based upon reliable methods and principles.

Defendant cites to *United States v. Smith*, 156 F.3d 1046 (10th Cir. 1998), in which the Tenth Circuit held that eyewitness testimony may be admissible in some circumstances. Dkt. No. 56 at 2-3. Defendant additionally cites to two further district court cases in which expert testimony on the fallibility of eyewitness testimony and memory was permitted. Dkt. No. 56 at 3 (citing *United States v. Maxwell*, 2021 U.S. Dist. LEXIS 228127 (S.D.N.Y. Nov. 21, 2021); *U.S. v. Jack Witt Voris*, Case. No. CR-16-2267-TUC-CKJ-DTF).

To the extent that Defendant cites these cases to demonstrate that the proposed testimony "has been accepted in the relevant scientific community" or that such testimony is routinely admitted as reliable, this Court is not persuaded. *Daubert*, 509 U.S. at 593-594. The cases cited share little to no factual similarity with the present case. *Smith*, a case in which Dr. Loftus' testimony was excluded, involved the much more familiar circumstance of a stranger identification following a brief criminal act. *Smith*, 156 F.3d at 1047-49. The facts in *Voris* are unclear, but review of the docket indicates that the admissibility of Dr. Loftus' testimony was simply never called into question. Lastly, the *Maxwell* decision permitted expert psychological testimony as it pertained to the fallibility of memory over a long period of time and how suggestive activities can affect memory; this testimony was permitted because of the "long period of time that had elapsed since the charged conduct" and because the Government intended to introduce its own

psychological expert on delayed disclosure of abuse. *Maxwell*, 2021 U.S. Dist. LEXIS 228127, *25. There is no similar issue regarding a prolonged passage of time in this case. To be clear, the Court is not insisting that Defendant point to an identical case, but, in this Court's view, the facts of this matter are so different from the ordinary case in which one may expect to encounter expert psychological testimony that any case, study, or other authority is unhelpful if it fails to account for at least some of the particular facts of this case, such as E.F.'s familiarity with Defendant, E.F.'s prolonged interaction with her assailant, and her immediate identification of Defendant.

Defendant next states that "the references for [Dr. Loftus'] testimony show that his opinions are based on reliable, peer-reviewed, scientifically conducted studies." Dkt. No. 56 at 3. There are approximately 58 articles and books cited as references for Dr. Loftus' testimony [Dkt. No. 49-1], and Defendant has failed to explain how any one of the cited works will support Dr. Loftus' proposed testimony. Dkt. No. 56. A review of the titles of this bibliography leads the Court to believe that these articles are in no way particularized to this particular case, but, rather, are included in every case in which Dr. Loftus proposes to testify. Dkt. No. 49-1. No source appears to discuss misrecognition of acquaintances as strangers, problems inherent in eyewitness identifications of non-strangers, or how mere exposure to an individual soon after a crime could lead to misidentification.

Defendant represents that Dr. Loftus would rely on a study, attached for this Court's review, that assessed "whether human memory for 'recently experienced, personally relevant, high stress events [such as physical assaults] would be altered by exposure to suggestive misinformation.'" Dkt. No. 56 at 3 (citing C.A. Morgan, III et al. *Misinformation Can Influence Memory for Recently Experienced, Highly Stressful Events*, 36 INT'L J. L. & PSYCHOL. 11 (2013)). Upon review, this study has little to no relevance that the Court can discern. In the study,

researchers subjected study participants, U.S. military personnel who had recently undergone the high-stress experience of "Survival School," to various forms of deliberate, suggestive misinformation; as hypothesized, those participants who were subjected to targeted misinformation tended to misrecollect events in a manner reflecting the misinformation to which they were subjected and tended to misremember events to a greater degree than those who were not subject to misinformation. This study chiefly concerns the effects of suggestive misinformation on recollection, and Defendant has not identified any comparable source of suggestive misinformation in this case (the Court is unpersuaded that the mere appearance of Defendant at E.F.'s home is comparable to the deliberate, suggestive misinformation employed in the study). This study is simply too dissimilar from the facts of this case to lend any real support to Defendant's proposed expert testimony.

This Court has little doubt that reliable, peer-reviewed scientific literature supports the notion that eyewitness identifications of strangers following brief, traumatic interactions may be unreliable and that these reliability issues can be exacerbated by subsequent misinformation or suggestive practices. And the Court has no doubt that the same has been accepted in the psychological community. But the case at bar simply does not present these facts: Defendant was not a stranger to E.F., the interaction between E.F. and her assailant was prolonged, E.F. identified Defendant as her assailant immediately after the assault occurred, and there is no real suggestion that E.F. was subjected to any misinformation suggesting that Defendant was her assailant. Because of these distinctions between Dr. Loftus' proposed testimony in this case and the cited references for his testimony, this Court finds that Defendant has not presented a reliable basis for Dr. Loftus' testimony regarding false memory formation and stranger misrecognition as it relates to this matter.

10

**D.  Even if Dr. Loftus' testimony were based on reliable methods and principles, it would not be helpful to the jury in this case.**

The Tenth Circuit has held that outside of "specialized" or "narrow" circumstances expert psychological testimony such as Dr. Loftus' "is unlikely to assist the jury" because "skillful cross-examination provides an equally, if not more, effective tool for testing the reliability of an eyewitness at trial." *Rodriguez-Felix*, 450 F.3d at 1125 (citing *Smith*, 156 F.3d at 1053; *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999); *United States v. Thoma*, 713 F.2d 604, 607-08 (10th Cir. 1983)); *see also*, *Howard v. Clark*, 608 F.3d 563, 574 (9th Cir. 2010).  The "narrow circumstances" under which expert psychological testimony may be admitted include "such problems as cross-racial identification, identification after a long delay, identification after observation under stress, and such psychological phenomena as the feedback factor and unconscious transference." *Rodriguez-Felix*, 450 F.3d at 1124 (citing *Smith*, 156 F.3d at 1053). These are examples only, and "the particular facts of a case drive the analysis." *Id*.  The Tenth Circuit has set forth non-exclusive factors a court may consider in determining whether a proposed expert's testimony will be helpful to a jury:  "(1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility." *Id*. at 1123.

As already noted, the facts of this case distinguish it from the typical case in which expert psychological testimony will be useful to a jury.  A critical distinguishing fact is that the Defendant was well-known to the identifying witness; both social science studies and case law indicate that such familiarity significantly lessens the danger of errant eyewitness identifications.  See § II(C), *supra*, pp. 6-7.  A further important distinction is that the assault at issue took place over approximately four hours, giving E.F. a clear opportunity to see and speak with her assailant.  Lastly, there was no delay in E.F.'s identification of her assailant.

Taken together, the facts of this case fall well outside of the limited circumstances in which expert psychological testimony would be relevant or helpful to a jury. "Jurors, assisted by skillful cross-examination, are quite capable of using their common-sense and faculties" to evaluate the reliability and credibility of E.F.'s testimony. *Rodriguez-Felix*, 450 F.3d at 1125. Lastly, to the extent that Defendant seeks to introduce expert testimony that simply bolsters his theory of the case – i.e., that E.F. misidentified her assailant as Defendant because she encountered Defendant soon after her assault – the Court believes that such testimony would impermissibly "usurp the juror's role of evaluating [E.F.'s] credibility." *Id.* at 1123. Dr. Loftus' proposed testimony would not be helpful to the trier of fact in this matter.

## CONCLUSION

IT IS THEREFORE ORDERED that the Defendant's Motion to Reconsider Excluding Testimony of Dr. Geoffrey Loftus [Dkt. No. 151] is DENIED. In accordance with this Court's previous Order [Dkt. No. 59], as supplemented by the foregoing Opinion and Order, the Court EXCLUDES the testimony of Dr. Loftus.

Dated this 4th day of March 2025.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE